**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1347**

KEITH REILLY,

          Petitioner,

    v.

UNITED STATES DEPARTMENT OF LABOR,

          Respondent.

On Petition for Review of an Order of the Merit Systems Protection Board. (DC-1221-22-0531-W-3; DC-1221-22-0093-B-1; DC-1221-22-0531-W-2)

Argued: January 29, 2026                               Decided: April 2, 2026

Before DIAZ, Chief Judge, and RICHARDSON and RUSHING, Circuit Judges.

Petition denied by unpublished opinion. Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Rushing joined.

**ARGUED:** Jacob M. Small, J. MADISON PLC, McLean, Virginia, for Petitioner. Mollie Lenore Gropp, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, Elizabeth M. Hosford, Joshua W. Moore, Commercial Litigation Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Matthew N. Babington, Office of the Solicitor, Jonathan Heinz, Office of Inspector General, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for

2

Respondent.

_____

Unpublished opinions are not binding precedent in this circuit.

2

DIAZ, Chief Judge:

When Keith Reilly worked for the United States Department of Labor's Office of the Inspector General, he reported being harassed by a supervisor. But around the same time, Reilly disclosed several medical disorders, and two doctors found him unfit for duty. So the Department relieved him of his position. In the years after, Reilly sought other positions within the Department but was either blocked from applying or not selected. Reilly argues that the Department took these actions in retaliation for his whistleblowing.

The Merit Systems Protection Board dismissed Reilly's claims, and we find no reversible error in its reasoning. So we deny the petition for review.

I.

By law, federal agencies may not take, or fail to take, a "personnel action" because an employee disclosed something that he "reasonably believes evidences [] (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . ." 5 U.S.C. § 2302(b)(8).

Agencies also can't retaliate against an employee because the employee "exercise[d] [] any appeal, complaint, or grievance right granted by any law, rule, or regulation," or "cooperat[ed] with or disclos[ed] information to the Inspector General . . . of an agency, or the Special Counsel." *Id.* § 2302(b)(9).

3

An aggrieved employee can seek corrective action from the Merit Systems Protection Board. *Id.* § 1221(a). But the Board only has jurisdiction over cases that meet two requirements.

First, the employee must have exhausted his administrative remedies before the Office of Special Counsel. *See id.* § 1214 (a)(3); 5 C.F.R. § 1201.57(c)(1). Second, the employee must make "nonfrivolous allegations" that "(1) a personnel action was threatened, proposed, taken, or not taken (2) because of (3) the [employee's] whistleblowing activity." *Jones v. U.S. Merit Sys. Prot. Bd.*, 103 F.4th 984, 998–99 (4th Cir. 2024) (citation modified).

If the Board has jurisdiction, the employee bears the burden of establishing a prima facie case of whistleblower retaliation. He must demonstrate, by a preponderance of evidence, both that he engaged in a protected activity and that the activity was a "contributing factor" in the agency's decision to take the disputed personnel action. *See* 5 U.S.C. § 1221(e); *Mikhaylov v. Dep't of Homeland Sec.*, 62 F.4th 862, 864 (4th Cir. 2023).

If the employee makes a prima facie case, the burden shifts to the agency. The agency can avoid corrective action if it establishes, by clear and convincing evidence, "that it would have taken the same personnel action in the absence of such [protected] disclosure." 5 U.S.C. § 1221(e)(2).

4

II.

A.

This appeal has an extended history that begins in 2016, when Reilly worked as a criminal investigator for the Department of Labor. The Department assigned Reilly a new supervisor that year, who allegedly began harassing Reilly and other colleagues.

Reilly reported this behavior to Department officials. During one of these conversations, he also disclosed that he was suffering from several medical conditions and that he "felt that [he] could not perform the duties of a criminal investigator." Joint Appendix ("J.A.") 204.

The Department notified Reilly the next day that, because of what he'd said about his medical conditions, it was restricting him from carrying a firearm, placing him on telework, and requiring him to undergo a fitness-for-duty examination. In response, Reilly confirmed again that he was "no longer able to perform [his] duties as a [c]riminal [i]nvestigator due to [his] medical condition." J.A. 205.

But the Department didn't just take Reilly's word for it. Reilly's physician also recommended that the Department relieve Reilly of his duties because of his anxiety and panic disorder. And the Department's psychologist diagnosed Reilly with generalized anxiety disorder, panic disorder, and delusional disorder, and found him unfit for duty.

The Department then began removing Reilly from his position, explaining that he wasn't medically fit for duty. After some negotiations, the parties agreed that rather than be removed, Reilly would apply for disability retirement and remain on unpaid leave in the meantime.

5

While his disability retirement application was pending, Reilly's counsel notified the Department that Reilly's doctor recently cleared him to work, so "the representations [Reilly] made in his disability retirement application as to the disabling nature of his condition [were] no longer accurate." J.A. 1009. Reilly's counsel asked the Department to reinstate Reilly as a criminal investigator and transfer him to a new office. But the Office of Personnel Management approved Reilly's disability retirement a few days later, and the Department refused to consider his request for reinstatement.

Reilly's retirement took effect in February 2018.

## B.

Nearly a year later, the Department announced that it was looking for a temporary criminal investigator to fill in for an individual on military leave. The Department needed someone who could "step right into the position," so it limited the applicant pool to current employees in the Department's Office of the Inspector General. J.A. 836–37. Since Reilly was on disability retirement, he couldn't apply.

Reilly filed a complaint with the Office of Special Counsel, alleging that the Department designed the vacancy announcement to prevent him from applying because he'd previously reported workplace harassment. The Office terminated its inquiry without acting, so Reilly appealed to the Merit Systems Protection Board.

An administrative judge dismissed Reilly's appeal for lack of jurisdiction. Relevant here, the judge found that he hadn't sufficiently alleged that his protected activity was a contributing factor in the Department's decision to limit the applicant pool to current employees. Reilly petitioned the full Board for review of that finding.

6

The Board granted Reilly's petition for review and reversed the administrative judge's jurisdictional ruling. It found that Reilly had adequately alleged that his protected disclosures were a "contributing factor in the [Department's] decision to effectively exclude him from the application pool" for the temporary investigator position. J.A. 374.

With jurisdiction established, the Board remanded the case for consideration on the merits.

## C.

While Reilly's inability-to-apply claim was making its way to the Board, he filed another complaint with the Office of Special Counsel. This complaint stemmed from a separate vacancy announcement, in which the Department sought a criminal investigator to provide protective services to agency officials. Reilly was able to apply for this job, but he wasn't selected.

Reilly alleged that the Department granted the selected candidate an "unauthorized [hiring] preference or advantage." J.A. 878. He claimed that the hiring officials advantaged the other candidate by "ma[king] [Reilly's] score lower and provid[ing] false statements that [he] did not work protection assignments." J.A. 878. But he didn't mention any protected disclosures or argue that the Department was retaliating against him for whistleblowing.

Shortly after submitting this complaint, Reilly emailed the Office of Special Counsel. He attached a screenshot showing that he'd not been selected for the protective services job, along with several attachments explaining his path to disability retirement. Reilly also identified his other pending appeal, noting that he was involved in a separate

7

case "with regard to ongoing Whistleblower Retaliation against the U.S. Department of Labor." J.A. 1279.

When the Office of Special Counsel terminated its inquiry into Reilly's non-selection claim, Reilly filed another appeal to the Board. In his brief, Reilly argued—for the first time—that the Department rejected him in retaliation for his whistleblowing. He later amended the appeal to include additional job rejections, which he argued supported a broader theory that the Department was "blacklisting" him from employment.

The administrative judge made jurisdictional findings that led it to dismiss these other "rejection" claims and limit the scope of Reilly's appeal to the protective services job application. The judge also dismissed Reilly's blacklisting theory as merely "speculative conjecture." J.A. 2067–68.

The judge later dismissed the entire appeal without prejudice, pending the outcome of Reilly's petition for review in his inability-to-apply case. After the Board remanded that case, Reilly refiled his non-selection claim. The same administrative judge heard both cases.

## D.

The administrative judge issued separate decisions on Reilly's two claims. On the merits of the inability-to-apply claim, the judge concluded that Reilly established a prima facie case of whistleblower retaliation. The judge found that Reilly proved by a preponderance of evidence that he'd made protected disclosures and that those disclosures were a contributing factor in the Department's decision to limit the applicant pool to internal candidates.

8

So the burden shifted to the Department to show that it would have taken the same personnel action in the absence of Reilly's protected disclosures. *See* 5 U.S.C. § 1221(e)(2). The administrative judge found that the Department met this burden.

Using the framework set out in *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318 (Fed. Cir. 1999), the judge concluded that (1) the Department had legitimate reasons for limiting the position to internal candidates, (2) there was only weak evidence of retaliatory motive, and (3) there was no evidence one way or another regarding how the Department treats similarly situated employees. Since two factors weighed in favor of the Department and one was neutral, the judge denied Reilly corrective action.

The judge separately dismissed Reilly's non-selection claim for lack of jurisdiction, finding that he'd failed to exhaust his remedies. The judge explained that Reilly's complaint to the Office of Special Counsel never alleged that the Department's hiring decision was retaliation for whistleblowing—he only claimed that the Department gave another applicant a hiring advantage. And Reilly hadn't included any "underlying factual allegations" that showed "that his whistleblowing was a contributing factor in his non-selection." J.A. 2697. Since Reilly hadn't "provided [the Office of Special Counsel] with a sufficient basis to pursue an investigation" for whistleblowing retaliation, the judge concluded that he failed to exhaust his remedies. J.A. 2696.

Alternatively, the judge reasoned that even if it had jurisdiction, Reilly's claim failed on the merits because he hadn't proved that his protected disclosures were a contributing factor in the Department's hiring decision. The judge found that the

9

Department's decision was more likely based on the chosen candidate's superior qualifications and experience.

This appeal followed.[*]

## III.

Our review of Merit Systems Protection Board decisions "is very limited." *Mikhaylov*, 62 F.4th at 868. "We may only set aside agency actions, findings, or conclusions if they are '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Flynn v. U.S. Sec. & Exch. Comm'n*, 877 F.3d 200, 204 (4th Cir. 2017) (quoting 5 U.S.C. § 7703(c)).

Having thoroughly considered the administrative record, as well as the parties' briefs and oral arguments, we're satisfied that the Board's decisions are supported by substantial evidence and contain no reversible error. Accordingly, we adopt the Board's reasoning and deny Reilly's petition for review.

*PETITION DENIED*

---

[*] Reilly chose not to petition the full Board for review of either decision, so the decisions below became final thirty-five days after issuance. We now have jurisdiction under 5 U.S.C. § 7703(b)(1)(B).

10